STATE OF NEBRASKA, APPELLEE, V.
JERRY A. WREDT, APPELLANT.

302 N.W.2d 701

Filed February 27, 1981.   No. 43484.

William B. Zastera for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Jerry A. Wredt, the defendant, pleaded guilty to the December 4, 1979, second degree murder of his father, Jerry L. Wredt, and was sentenced to confinement to the Nebraska Division of Corrections, Department of Institutions, for a term of life. He has appealed to this court, contending only that the sentence was excessive.

Murder in the second degree is a violation of Neb. Rev. Stat. § 28-304 (Reissue 1979) and is a Class IB felony. The punishment provided by law is a minimum term of imprisonment of 10 years and a maximum

term of life. This, in fact, is the effect of the sentence here imposed.

The defendant was 16 years old at the time of the commission of the crime, having been born on June 8, 1963. He was the eldest of four children, and his natural mother had died of a drug and alcohol overdose on April 14, 1974. The father, who was 40 years old at the time of his death, had been married to his present wife, Sheri, for approximately 5 years. She was 30 years of age and had five children by a former marriage. In addition, they had a 3-year-old child of their own. The defendant lived in Syracuse, Nebraska, with his father, stepmother, and some of the children.

The record indicates that the victim had a vile and at times uncontrollable temper, and certain vicious propensities. His own brother stated that he had heard him threaten to kill their parents, his wife Sheri, and numerous other people. The defendant told of several times seeing or hearing his father abuse and assault his natural mother. He also said that his father kept threatening to hurt Sheri.

Additionally, Sheri, the stepmother, stated that the victim and she were having a stormy marriage, and that he had threatened and abused her on occasion. The defendant said that he was afraid of his father, not only because of possible harm to himself but because he was particularly worried about possible injury to Sheri. Apparently, there had been discussions between the defendant and Sheri, as well as between Sheri and a woman friend, as to what could be done to alleviate the problem. On the evening before the homicide, Sheri asked the defendant "how we could kill him." The defendant suggested that she could use a butcher knife. Nothing more was discussed that evening. The following day, according to the defendant, Sheri again asked "how could we kill him," and the defendant suggested that they could shoot him. Various plans to make the shooting appear to be self-defense or accidental were discussed during the rest of the day. Sheri showed

the defendant where the victim kept his guns, and the defendant selected a .45-caliber revolver. The defendant test-fired the revolver outside to make certain that it functioned properly. Further, according to the defendant's statement given to the authorities, the discussion centered around the fact that the defendant would be able to have the victim's pickup truck and then would have the insurance money.

The final plan agreed upon, and executed, was that the defendant took the revolver outside and waited for the victim to come home, which he did shortly after 6 p.m. After the victim got out of his truck and started walking toward the house, the defendant stepped out from the corner of the house, aimed and cocked the revolver, and fired one shot into his father's chest. Apparently, the shot was almost immediately fatal.

The defendant was originally charged with the crime of murder in the first degree, but pleaded guilty to the amended charge of murder in the second degree. Although no issue is raised other than the claimed excessiveness of the sentence, we do observe from a complete review of the record that at the arraignment the district judge plainly and completely explained to the defendant, in the presence of his attorney, all of his rights and the consequences of a guilty plea, and the defendant freely, voluntarily, and knowingly waived these rights.

In his brief, the defendant points out 18 different mitigating factors which he insists militate against imposing the maximum sentence in this case. These may be summarized to include the defendant's chronological age, at the time, of 16 years, 5 months; a maturity level of 13 to 14 years of age; the defendant suffered from a mild to severe neurosis, was submissive to authoritarian figures, possessed a need to please, and suffered from obsessionalism; the absence of prior criminal activity and no signs of previous antisocial or violent behavior; the abusive and threatening behavior of the victim toward the family; the pressure

or influence exerted by the stepmother; and the need for treatment by experts in the field of juvenile psychiatry. We would agree that the record supports such factual findings. The question which we must decide is whether such elements are sufficient for us to conclude that the trial court abused its discretion in imposing a sentence within the statutory limits. *State v. Hawkman*, 198 Neb. 578, 254 N.W.2d 90 (1977).

The record does not disclose the consequences which the stepmother may have suffered or will be subjected to for her role in this tragic episode. Whatever influence she may have had on the defendant, it was he who made the final plans and carried them out in a cold and calculating manner, resulting in the death of his father. The facts could have supported a conviction for first degree murder for which life imprisonment would have been the minimum sentence.

The defendant cites *State v. Sturm*, 189 Neb. 299, 202 N.W.2d 381 (1972), as supporting his position that a past history of violence on the part of the victim constitutes a mitigating circumstance which should influence the sentence. However, we are not prepared to say in this case that the victim was a bad man and deserved to die and therefore the trial judge abused his discretion in imposing the maximum sentence. As announced by the trial judge at the time of sentencing, a lesser sentence would have depreciated the seriousness of the crime and promoted disrespect for the law. Neb. Rev. Stat. § 29-2260(2)(c) (Reissue 1979). This we believe was a legitimate and overriding concern in this case.

The judgment and sentence of the District Court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

To approve a maximum sentence of life imprisonment on the guilty plea of a 16-year-old boy with no prior criminal record under the specific facts and circumstances outlined in the majority opinion consti-

tutes a complete abdication of the duty of this court to review and correct excessive sentences. In my view, a maximum sentence of 20 years would have been more than sufficient to satisfy societal demands for retribution.